William J. O'Reilly, Esq. City Attorney, Olean
You have asked whether the City of Olean is authorized to enter into a 25-year agreement with a private developer under which a private hotel is guaranteed a minimum of 249 spaces in certain city-owned public parking lots.
As we understand the situation, this agreement is an element in a downtown development program under an urban renewal plan. Under that plan the Olean Urban Renewal Agency acquired several parcels of land for urban renewal purposes. The agency in turn conveyed the parcels to the city for the construction of public parking lots in accordance with the urban renewal plan: These lots were constructed under an Economic Development Administration grant. The final, relevant step is the private development of land in the vicinity of the lots. This development is the construction of a hotel, financed in part through an Urban Development Action Grant and Loan. The hotel project includes parking facilities but the available land does not permit facilities adequate to meet the hotel's maximum parking requirements. The solution to the problem is the agreement to guarantee 249 spaces in designated public parking lots.
It is not clear to us exactly how the guarantee is enforced, but we do not view this as crucial to determining the validity of the agreement. We note that the hotel makes an annual payment to the city under the agreement, $5,000 now, increasing to larger payments under various contingencies. This amount obviously does not represent the parking charge for 249 vehicles every day in a year; rather, the amount is the agreed-upon value of the guarantee. We can only assume that the city will be able to juggle usage in a manner that accommodates general public use and the occasional heavy use by the hotel. In any event, the crucial question is whether the city has the power to enter into such an agreement.
As we noted at the beginning, the agreement is a minor element in a comprehensive urban renewal plan. Articles 15 and 15-A of the General Municipal Law are broad grants of power to municipalities to engage in projects large and small in furtherance of restoring, redeveloping, rehabilitating, or otherwise improving run-down urban areas. Although we find nothing specific in Article 15 authorizing this particular type of agreement, we note that a municipality is authorized to sell or to lease urban renewal property to private developers under favorable terms (§ 507 [2] [c]). Under the legislative admonition to construe Article 15 liberally (§ 520), we find no denial of power to further an urban renewal project by guaranteeing to a private developer parking spaces in public parking lots.
Nor do we consider this agreement a gift in aid of a private undertaking that is prohibited by section 1 of Article VIII of the State Constitution. It is well-settled that support of private undertakings in accordance with an urban renewal plan are not prohibited by section 1 (Yonkers Community Development Agency v Morris, 37 N.Y.2d 478 [1975]). Even if it is assumed that the city's compensation under the agreement is less than a bargain reached at arms-length, the public interest of the City of Olean is served by assuring the developer that the hotel will not suffer from inadequate parking facilities for its customers.
We conclude that a municipality, in carrying out an urban renewal plan, may enter into a long-term agreement with a private developer under which the municipality guarantees the availability of a designated number of parking spaces in public parking lots for use of the developer's customers.